IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| JOSHUA KEITH HURT | * |
| | * |
| Plaintiff, | * |
| v. | * |
| | *   No. 3:16CV00161-JJV |
| GREENE COUNTY SHERIFF'S | * |
| DEPARTMENT; *et al.* | * |
| | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Joshua Keith Hurt ("Plaintiff") brings this action *pro se* and under 42 U.S.C. § 1983, claiming Defendants, officials at the Greene County Detention Facility, failed to protect him from an attack by another inmate. (Doc. No. 5.) Defendants Greene County Sheriff's Department, John Cawley, and Roy Peters were previously dismissed without prejudice (Doc. Nos. 14, 27), leaving only Plaintiff's claims against Defendants Terry Sullivan and C. J. Looney. Defendants Sullivan and Looney have now filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims. (Doc. No. 30.) Plaintiff has not responded, and this matter is now ripe for a decision. For the following reasons, I find summary judgment is appropriate and this action is dismissed.

**II.   SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record,

"including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. FACTS

Plaintiff alleges he was incarcerated at the Greene County Detention Facility while awaiting trial on misdemeanor traffic tickets and was assaulted by another inmate who was being held on a felony warrant. (Doc. No. 5 at 4.) The assault occurred on either August 21 or 22, 2014, and began between 12:00 and 1:00 p.m. (*Id.*, Doc. No. 32 at 1.) Plaintiff states he was sitting and watching television in the "day room" in pod D4 when the other inmate struck him and knocked him to the floor, chipping "a bunch" of Plaintiff's teeth and causing bleeding. (Doc. Nos. 5 at 4; 32 at 1.) According to Plaintiff, this part of the assault happened on camera. (Doc. No. 5 at 4.) The other inmate then shoved Plaintiff into the barracks, off camera, and kept him in there via intimidation and

threats until "last chow" at 5:00 p.m.  (Doc. Nos. 5 at 4-5; 32 at 1.)  Plaintiff states Defendants Sullivan and Peters finally pulled him out of the pod after he told them what happened and showed them his wounds.  (Doc. No. 5 at 5.)  He claims Defendant Sullivan was "in charge at the time" and scolded Defendant Peters "for not catching it on the monitor when it was happening."  (*Id*.)

In the weeks following, Plaintiff made multiple requests to file a grievance and to file charges against his attacker; these were ignored until he was able to speak with the newly appointed jail administrator, who "immediately had [Defendant] Looney bring [Plaintiff] the necessary forms." (*Id*.)  After Defendant Looney brought the forms, Plaintiff was able to file a grievance and "misdemeanor assault charges."  (*Id*. at 6.)

Plaintiff alleges the attack has caused him night terrors and anxiety in addition to his damaged teeth.  (*Id*. at 5-6.)  He seeks $150,000 in damages.  (*Id*. at 7.)

## IV.  ANALYSIS

### A.  Official Capacity Claims

First, Plaintiff has sued Defendants Sullivan and Looney in both their personal and official capacities.  (Doc. No. 5 at 2.)  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)).  As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.  *Id*. at 166.  Thus, Plaintiff's official capacity claims against Defendants Sullivan and Looney are to be treated as claims against Greene County.

Section 1983 liability against municipalities and other local government units is limited:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be

>unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91. A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id*. at 691. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

Plaintiff has not identified any official policy or unofficial custom of Greene County that caused or contributed to his alleged injuries. Accordingly, his official capacity claims against Defendants Sullivan and Looney must be dismissed.

### B. Personal Capacity Claims

Defendants Sullivan and Looney contend they are entitled to qualified immunity on Plaintiff's claims against them in their individual capacities. (Doc. No. 31 at 4.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable

to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional or statutory rights.

The Eighth Amendment[2] requires prison officials to take reasonable measures to guarantee the safety of inmates and to protect them from violence at the hands of other inmates. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). An Eighth Amendment claim for failure to protect is comprised of two elements. *Riley v. Olk-Long*, 282 F.3d 592, 595 (8th Cir. 2002). First, an inmate must show he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. (citing *Farmer*, 511 U.S. at 834). Second, the inmate must establish prison officials recklessly disregarded that risk. *Id*. For purposes of failure-to-protect claims, it does not matter "whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Hott v. Hennepin Cty., Minn.*, 260 F.3d 901, 906 (8th Cir. 2001) (quoting *Farmer*, 511 U.S. at 843). The question is whether a prison official has a "sufficiently culpable state of mind," meaning he is deliberately

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

[2] Plaintiff was a pretrial detainee during his incarceration. (Doc. No. 32-1 at 1.) But pretrial detainees are entitled to at least as much protection as convicted inmates, and their failure-to-protect claims are analyzed under the same Eighth Amendment analysis used for similar claims brought by prisoners. *See, e.g.*, *Perkins v. Grimes*, 161 F.3d 1127, 1129-30 (8th Cir. 1998).

indifferent to an inmate's safety. *Riley*, 282 F.3d at 595 (quoting *Farmer*, 511 U.S. at 834). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id*. He must both know of and disregard an excessive risk to inmate safety; in other words, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Defendants Sullivan and Looney argue Plaintiff has not established they were deliberately indifferent to his safety. (Doc. No. 31 at 5.) More specifically, they contend Plaintiff has failed to show they knew of any facts from which the inference could be drawn that a substantial risk of serious harm existed. (*Id*. at 6.) According to their affidavits, neither Defendant Sullivan nor Defendant Looney knew Plaintiff was at risk of harm from any inmate. (Doc. Nos. 32-3 at 1; 32-4 at 1.) Plaintiff has provided no evidence to the contrary. And neither Defendant Sullivan nor Defendant Looney saw the incident occur. (*Id*.) Thus, Plaintiff cannot show they were aware of a risk, due to having witnessed the outset of the assault on camera, and did nothing to stop it. Moreover, to the extent Plaintiff suggests he was exposed to a substantial risk by being housed with an inmate being held on a felony warrant (Doc. No. 5 at 4), I can find no authority stating inmates must be segregated based on the classification of the offense with which they are charged. Even if Plaintiff's attacker had been a convicted felon awaiting transport to the Arkansas Department of Correction, "the overwhelming weight of persuasive authority holds that unless the state has an intent to punish, or at least displays an indifference toward potential harm to an inmate, pre-trial detainees have no due process right to be housed separately from sentenced inmates." *Burciaga v. Cty. of Lenawee*, 123 F. Supp. 2d 1076, 1078 (E.D. Mich. 2000) (citing collected cases).

Even if Plaintiff could show Defendants Sullivan and Looney knew of an excessive risk to his safety, he has not alleged any facts to show they disregarded that risk. According to Plaintiff's

6

Amended Complaint, Defendant Looney's only role in the incident was to provide forms, when instructed to do so by the newly appointed jail administrator, so Plaintiff could file a grievance and charges against the inmate who attacked him.  (Doc. No. 5 at 5-6.)  Plaintiff acknowledges Defendant Looney provided those forms and he was "able to file a grievance and misdemeanor assault charges." (*Id*. at 6.)  With respect to Defendant Sullivan, Plaintiff only implies he should have seen the attack begin on camera: "[W]hy else would they have camera system and guards if no one was watching[?]" (*Id*. at 5.)  First, "even if it could be concluded that [Defendant Sullivan's] conduct was somehow unreasonable, 'reasonableness is a negligence standard' and negligence cannot give rise to an Eighth Amendment failure-to-protect claim." *Pagels*, 335 F.3d at 742 (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)).  Second, Plaintiff suggests it was Defendant Peters's job to watch the camera and Defendant Sullivan was merely "in charge at the time." (Doc. No. 5 at 5.)  In the § 1983 context, a supervisor cannot be held liable for an employee's unconstitutional actions on a theory of *respondeat superior*. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

For these reasons, Plaintiff has failed to show Defendants Sullivan and Looney violated his constitutional rights by disregarding a known risk to his safety.  Because the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of a constitutional or statutory right, Defendants Sullivan and Looney are entitled to qualified immunity.  Accordingly, Plaintiff's claims against them in their individual capacities must be dismissed.

## V.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.   The Motion for Summary Judgment filed by Defendants Sullivan and Looney (Doc. No. 30) is GRANTED.

2.Plaintiff's claims against Defendants Sullivan and Looney are DISMISSED with prejudice.

3.Plaintiff's Amended Complaint (Doc. No. 5) is DISMISSED.

4.Pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from this Order or accompanying Judgment would not be taken in good faith.

IT IS SO ORDERED this 25th day of April, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE